IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NAZIR EL,                          )
                                   )
            Plaintiff,             )
                                   )
      v.                           ) Civil Action No. 17-662-CFC
                                   )
D. CAPIAK,                         )
                                   )
            Defendant.             )

## MEMORANDUM OPINION

Nazir El, Roselle, New Jersey; Pro Se Plaintiff.

Donna Lynn Culver, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware; Counsel for Defendant.

September 20, 2019
Wilmington, Delaware

*Coln F. Connolly*

**CONNOLLY, U.S. District Judge:**

Plaintiff Nasir El, a/k/a Anthony Tillman ("Plaintiff"), who proceeds *pro se*, commenced this action on June 1, 2017. (D.I. 1) The Amended Complaint is the operative pleading and the matter proceeds against Defendant D. Capiak ("Defendant"). (D.I. 24) The Court has jurisdiction pursuant to 28 U.S.C. § 1331.[1] Presently before the Court is Defendant's motion for summary judgment, opposed by Plaintiff. (D.I. 33) The matter has been fully briefed.

## I. BACKGROUND

### A. The Amended Complaint

As alleged in the Amended Complaint,[2] on May 6, 2017, Plaintiff was involved in a traffic stop near the Delaware Memorial Bridge by Defendant, a Delaware River Bay Authority ("DRBA") patrolman, after an internal database search of the license plate of the car Plaintiff was driving revealed that the car's registered owner had a suspended driver's license. (D.I. 24 at 2) During the stop, Defendant asked Plaintiff to provide him with a driver's license, vehicle registration, and proof of insurance. (*Id.*) When

---

[1] Plaintiff seems to indicate the Court has jurisdiction by reason of diversity of the parties pursuant to 28 U.S.C. § 1332.

[2] The Court considers only the allegations in the Amended Complaint. (D.I. 24) It does not consider Plaintiff's "response" to Defendant's answer as raising additional claims. (D.I. 27) Nor does the Court consider the "addendum to the amended complaint" as raising additional claims. (D.I. 28) The Court struck the addendum on December 14, 2018. (*See* D.I. 36) Finally, to the extent Plaintiff attempts to add new claims in his opposition to the motion for summary judgment, those claims are not considered. *See Bell v. City of Philadelphia.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment").

1

Plaintiff produced a Moorish National identification card, Defendant asked, "so you don't think you need to follow our laws?" and "so you're from Morocco?" and Plaintiff replied, "this is Morocco." (*Id.*) Plaintiff alleges that Defendant's expression was one of bewilderment and lack of understanding. (*Id.*) Plaintiff alleges that on the day in question, his car was insured and registered. (*Id.* at 3)

After Plaintiff was informed of the reason for the traffic stop and asked to step out of the car, he requested that Defendant's supervisor be called to the scene. (*Id.*) Upon the supervisor's arrival, an unnamed individual handcuffed and searched Plaintiff and placed Plaintiff in Defendant's vehicle. (*Id.*) While Plaintiff was detained, his car was searched and then towed to Nick's Auto Repair. (*Id.*) About an hour later, Plaintiff was driven to a McDonald's parking lot and released. (*Id.*)

While not clear, the Amended Complaint seems to attempt to raise claims for violations of: (1) the Fourth Amendment of the United States Constitution for unlawful search and seizure made without probable cause and a warrant; (2) the Fifth Amendment of the United States Constitution for unlawful taking of property without compensation and without due process; (3) procedural and substantive due process; (4) unlawful issuance of traffic tickets under 21 Del. C. § 2108 (registration), § 2118 (insurance), and § 6901(a)(1) (towing of unregistered vehicle or expired vehicle registration); (5) the constitutions of Delaware and New Jersey; and (6) 18 U.S.C. § 241 (conspiracy), § 242 (deprivation of rights under color of law), and § 245 (federally protected activities). (D.I. 24 at 3, 4, 8, 23-27) Plaintiff seeks declaratory relief and compensatory damages.

2

### B.    Facts[3]

On May 6, 2017, at approximately 2:40 p.m., while on a routine patrol of Interstate 295 northbound in Delaware, Defendant saw a black Acura car with a Delaware license plate approach the Delaware Memorial Bridge.   (D.I. 35 at ¶ 2)[4] Pursuant to DRBA standard procedure, Defendant ran the car's Delaware license plate through a computer database.   (*Id.*)   Search results indicated that the car was registered to Plaintiff (who was later identified as Anthony Tillman), that Plaintiff's Delaware driver's license was suspended, and that Plaintiff had an outstanding Delaware capias for a speeding ticket.   (*Id.* at ¶¶ 2, 3)

Because the results indicated that the driver of the car could be in violation of 21 Del. C. § 2756, which prohibits the operation of a motor vehicle by a driver with a suspended license, Defendant followed the vehicle over the Delaware Memorial Bridge into New Jersey and pulled Plaintiff over onto the shoulder.   (*Id.* at ¶ 3)   Defendant walked to the driver's side of Plaintiff's vehicle, and asked Plaintiff for his driver's license, registration card, and proof of insurance.   Plaintiff said, "no"; and then explained that the laws of the United States did not apply to him and he therefore did not have to comply with Defendant's request.   (*Id.*)   Plaintiff told Defendant that Defendant would be subject to suit in federal court and asked to speak to Defendant's supervisor.   (*Id.* at ¶ 4)   Defendant then radioed Master Corporal Wasson, who arrived shortly thereafter and spoke to Plaintiff, who remained in his car.   (*Id.*)

---

[3] The facts are viewed in the light most favorable Plaintiff, the non-moving party.

[4] Docket Item 35 is the declaration of Defendant.   (D.I. 35)   It is unrefuted.

After Plaintiff and Wasson spoke for a short time, Wasson called Defendant over and asked Plaintiff to step out of the car. (*Id.* at ¶ 4) When Plaintiff exited the car, Defendant handcuffed him, patted him down for safety, and discovered on Plaintiff's person a Moorish-American identity card and a debit card issued to Anthony Tillman. (*Id.*) Plaintiff was placed in the back seat of Defendant's DRBA vehicle and detained until his identity could be confirmed pursuant to 11 Del. C. § 1902, which permits officers to detain individuals for up to two hours while their identity is ascertained. (*Id.*)

During Plaintiff's detention, Wasson ran a computer search, which revealed a Delaware driver's license with a photograph of Anthony Tillman and an expired New Jersey driver's license with a photograph of Anthony Tillman. (*Id.* at ¶ 5) Wasson asked Plaintiff if he was Anthony Tillman; Plaintiff replied that he was not, and stated that Anthony Tillman was his friend. *Id.* Wasson and Defendant agreed that Plaintiff was Anthony Tillman based on the license photographs. (*Id.*)

As Plaintiff did not have his insurance card and registration in his possession, he could not legally operate a vehicle. (*Id.* at ¶ 6) Because Plaintiff was not legally permitted to operate his car, and leaving the car on the side of the highway would constitute a public safety hazard, the officers decided to tow it in accordance with DRBA Directive § 61.4.3.[5] (*Id.*) Mario's Towing Company was called to tow the vehicle.

---

[5] Paragraph VII.F. of Directive § 61.4.3 provides that a motor vehicle may be towed from a public highway in Delaware when the vehicle is unregistered or has an expired registration and in New Jersey when the vehicle is unregistered. (D.I. 35-1 at 5)

(*Id.*) Next, Defendant inventoried the contents of the car in accordance with DRBA Directive § 61.4.3.[6] Mario's Towing Company arrived and towed Plaintiff's car. (*Id.*)

Defendant then drove Plaintiff to a McDonald's parking lot in Pennsville, New Jersey. (*Id.* at ¶ 7) There, he uncuffed Plaintiff and issued him: (1) a citation for driving with a suspended license in violation of 21 Del. C. § 2756; (2) a citation for failure to have an insurance identification card in his possession in violation of 21 Del. C. § 2118; (3) a citation for failure to have a registration card in his possession in violation of 21 Del. C. § 2108; (4) a citation for failure to have a license in his possession in violation of 21 Del. C. § 2721; and (5) a special complaint for interfering with an officer in violation of Pennsville Township Codified Ordinance, Chapter 8, Article 8.1-16. (*Id.* at ¶ 7 and Exs. B, C) Defendant explained to Plaintiff that he could retrieve his vehicle from Mario's Towing Company with a signed copy of the tow slip from the DRBA indicating that Plaintiff had proof of insurance and registration. (*Id.*) Plaintiff was also provided with a tow slip which listed the conditions under which he could retrieve the vehicle. (*Id.* at ¶ 7 and Ex. D) Defendant left the McDonald's parking lot at approximately 3:49 p.m. (*Id.* at ¶ 7)

On Monday, May 8, 2017, Plaintiff went to Mario's Towing to retrieve his vehicle. (D.I. 42) Plaintiff was told that the owner of the vehicle first had to appear at the DRBA to obtain a tow slip to confirm proof of insurance and registration.[7] (*Id.*) Plaintiff stated

---

[6] Paragraph II. of Directive § 61.4.3 provides that "[i]t is the policy of the DRBA that motor vehicles which are lawfully towed, removed, impounded or stored shall be inspected and inventoried according to DRBA procedures. . . ." (D.I. 35-1 at 3)

[7] Plaintiff apparently did not appear at Mario's Towing with the required documentation.

to a female employee that the car could stay with Mario's Towing, but he wanted to retrieve some personal effects from the car. (*Id.*) Plaintiff was told that the car and its contents had been seized and nothing could be released. (*Id.*) Plaintiff then asked the employee if the car could be locked and she replied that it could. (*Id.*)

## II. RECUSAL

Plaintiff seeks my recusal under 28 U.S.C. § 455 on the grounds that "there may be a rather large possibility and probability of conflict of interest, the ramifications of which are unclear and unknown at this time." (*Id.*) Section 455(a) requires a judge to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test for recusal under § 455(a) is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned," *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004), not "whether a judge actually harbors bias against a party," *United States v. Kennedy*, 682 F.3d 244, 258 (3d Cir. 2012). Under § 455(b)(1), a judge is required to recuse himself "[w]here he has a personal bias or prejudice concerning a party." Under either subsection, the bias necessary to require recusal generally "must stem from a source outside of the official proceedings." *Liteky v. United States*, 510 U.S. 540, 554 (1994); *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) (beliefs or opinions which merit recusal must involve an extrajudicial factor).

Plaintiff alleges that there may be conflict of interest because I was once a partner in Morris, Nichols, Arsht & Tunnell LLP, the law firm that represents Defendant in this action, and because I worked "as a federal prosecutor under then U.S. Attorney Gregory M. Sleet," the District Judge who was previously assigned this case. (D.I. 42

6

at 2) I was in fact a partner at Morris, Nichols from 1999 to 2001, and I was employed as an Assistant United States Attorney and worked for Judge Sleet between 1994 and 1998. A reasonable, well-informed observer, however, could not believe that my prior employment would cause impartiality, bias, or actual prejudice towards Plaintiff. I was not employed at Morris Nichols when Plaintiff filed this action and I had no knowledge of Plaintiff until this case was reassigned to me following Judge Sleet's retirement. After careful and deliberate consideration, I conclude that I have no actual bias or prejudice towards Plaintiff and that a reasonable, well-informed observer would not question my impartiality. Accordingly, there are no grounds for my recusal under 28 U.S.C. § 455.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standards

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be — or, alternatively, is — genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then

"come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more

than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594

(3d Cir. 2005) (stating party opposing summary judgment "must present more than just

bare assertions, conclusory allegations or suspicions to show the existence of a

genuine issue") (internal quotation marks omitted). The "mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment"; a factual dispute is genuine only where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who

fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial"). Thus,

the "mere existence of a scintilla of evidence" in support of the nonmoving party's

position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## B. Discussion

Defendant moves for summary judgment on the grounds that: (1) the investigatory stop, frisk, and inventory search of Plaintiff and his vehicle do not constitute an unlawful search and seizure; (2) the towing of Plaintiff's vehicle does not constitute an unlawful taking without just compensation; (3) Plaintiff lacks standing to bring civil claims under federal criminal statutes; (4) the breach of contract claim fails as a matter of law because there is no contract; and (5) the tort claim is neither actionable nor supported by the record. (D.I. 34) Plaintiff asks the Court to take judicial notice of Rules 201 and 202 of the Federal Rules of Evidence as well as the case law he cites in support of his position. (D.I. 40, D.I. 42 at 4-5)

### 1. Plaintiff's Moorish-American Status

While not clear, Plaintiff seems to argue that his self-proclaimed status as a Moor affects this case in two ways. First, he seems to claim that because he is a Moor he is not required to abide by state or federal laws, and thus, by implication, the rulings of this Court. Second, he seems to contend that the Court has diversity jurisdiction over the case because of his Moorish citizenship.

"The Moors profess that they are sovereigns of the Moorish Empire and not subject to the laws of the United States." *Ali v. Tucker*, 2013 WL 1858785, at *10 (E.D. Pa. Apr. 10, 2013. As has been noted by other courts, Plaintiff's "denunciation of the power of the federal government over the Moors is in direct contradiction to his

9

simultaneous petition for relief under the United States Constitution." *Id. See also El v. Asbury Park Mun. Court*, 2011 WL 2148854 (D.N.J. May 31, 2011). To the extent Plaintiff relies on the "sovereign citizen" theory to assert that he is beyond the jurisdiction of the state or federal courts, or not subject to the procedural and substantive requirements of federal law, such an assertion lacks an arguable basis in law or fact. *See El Bey v. Centralia Police Dep't*, 2013 WL 1788514, at *3 (S.D. Ill. Apr. 26, 2013) ("Plaintiff is free to call himself a Moorish American National, or any other description that suits him. However, he is subject to state and federal laws, just like any other person regardless of citizenship."); *see also Faltine v. Murphy*, 2016 WL 3162058, at *3 (E.D.N.Y. June 3, 2016) (noting that arguments based on "a so-called 'sovereign citizen' theory . . . have been repeatedly rejected by federal courts"). While Plaintiff may identify as a Moorish-American, he must obey the federal and applicable state laws, just as native-born and naturalized citizens are required to do. *See Khattab El v. United States Justice Dep't*, 1988 WL 5117, at *2 (E.D. Pa. Jan. 22, 1988); *Osiris v. Brown*, 2005 WL 2044904, at *2 (D.N.J. Aug. 24, 2014); *see also Howell-El v. United States*, 2006 WL 3076412, at *3 (S.D. Ill. Oct. 27, 2006). His claim that he is not obliged to do so is rejected.

With regard to diversity jurisdiction, as noted by other courts, a plaintiff's Moorish citizenship argument is a frivolous attempt to establish diversity of citizenship where none exits, and the ploy is not new. *See, e.g., Ingram El v. Crail*, 2019 WL 3860192, at *3 (E.D. Calif. Aug. 16, 2019); *Bey v. Municipal Court*, 2012 WL 714575 (D.N.J. Mar. 5, 2012 ("Any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are [by definition] frivolous."). Regardless of Plaintiff's

characterizations of his citizenship, his own complaint alleges facts that demonstrate that he resided in Delaware at the time he commenced this action. It is clear from Plaintiff's original filing that both he and Defendant were residents of Delaware, and thus diversity jurisdiction does not exist. In any event, given Plaintiff's allegations that his constitutional rights were violated, the Court has jurisdiction by reason of a federal question. *See* 28 U.S.C. § 1331.

### 2. Fourth Amendment

Defendant moves for summary judgment on the grounds that the facts do not support a claim for unlawful search and seizure. Plaintiff contends the stop was unlawful and that it was necessary for Defendant to obtain a warrant.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). Generally, a person is "seized" for the purposes of the Fourth Amendment when "a police officer accosts an individual and restrains his freedom to walk away." *Couden v. Duffy,* 446 F.3d 483, 494 (3d Cir. 2006) (quoting *Terry v. Ohio,* 392 U.S. 1, 16 (1968)). With some exceptions, a seizure is "reasonable only where it is justified by a warrant or probable cause." *Couden,* 446 F.3d at 494. The United States Supreme Court has recognized that a traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse,* 440 U.S. 648, 653 (1979); *see also Whren v. United States,* 517 U.S. 806, 809-10 (1996) ("Temporary detention of individuals during the stop of an

11

automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'. . . .").

It is undisputed that the traffic stop occurred after a routine computer check revealed that the driver's license of the vehicle's owner was suspended. The facts therefore sufficed to provide reasonable suspicion to support an investigatory stop. *See United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (explaining that any technical violation of a traffic code legitimizes a stop even where stop is pretextual); *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (police officer who observes a car driven in violation of state traffic laws may lawfully stop the car); *see also United States v. Cottman*, 497 F. Supp. 2d. 598, 603 (D. Del. 2007); *Harrison v. State*, 144 A3d 549, 551 (Del. 2016). Thus, the traffic stop did not violate Plaintiff's constitutional rights.

Nor do the facts support a conclusion that Plaintiff's constitutional rights were violated when he was frisked and detained. *See United States v. King*, 243 F. Supp. 3d 488, 497 (D. Del. 2017). Plaintiff did not provide an identification or registration of the vehicle and claimed that the laws did not apply to him. An officer may frisk an individual incident to an investigatory stop if a "reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Calloway*, 571 F. App'x 131 136 (3d Cir. 2014) (quoting *Terry v. Ohio*, 392 U.S. at 21. Defendant's actions in cuffing and frisking Plaintiff were reasonable given Plaintiff's failure to provide an identification, his denial of his actual identity, and his claim that the laws did not apply to him.

12

Nor did the search and seizure of Plaintiff's vehicle violate Plaintiff's rights. An inventory search of a motor vehicle is constitutional if "(1) the vehicle was impounded or in lawful police custody, (2) the search was conducted pursuant to standard police inventory procedures, and (3) the process was aimed at securing the vehicle and its contents." *United States v. Newman*, 104 F. App'x 801, 802 (3d Cir. 2004) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)). Here, the undisputed facts are that Plaintiff did not provide the registration or proof of insurance for the vehicle. Both Delaware and New Jersey provide for the towing of an unregistered vehicle. *See* 21 Del. C. § 6901; N.J.S.A. § 39:3-4. The vehicle was searched pursuant to DRBA procedures and towed because Plaintiff did not provide proof of a valid driver's license. Finally, the vehicle was not released to Plaintiff when he appeared at Mario's Towing to retrieve it because Plaintiff failed to provide a signed copy of the tow slip from the DRBA to confirm that he had proof of insurance and registration as required. It is lawful to retain Plaintiff's vehicle until he complies with the requirements for its release.

Given the undisputed facts, no reasonable jury could find that Defendant violated Plaintiff's rights under the Fourth Amendment. Therefore, Defendant's motion for summary judgment will be granted as to the Fourth Amendment issue.

### 3. Fifth Amendment

Defendant moves for summary judgment on Plaintiff's claim of unlawful taking. As there are no facts that Plaintiff's vehicle was seized for public use, the claim fails as a matter of law. *See American Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012) ("The Takings Clause of the Fifth Amendment prohibits the federal government from taking private property for public use without

providing just compensation [and] applies to state action through the Fourteenth Amendment."); *see also McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013) ("outside of the context of eminent domain, the government is not required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority") (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)) (internal quotations omitted); *Missud v. California*, 2013 WL 450391, at \*4 (N.D. Cal. Feb. 5, 2013) ("Towing vehicles that have accumulated an excessive number of parking tickets is an exercise of police power, and not a taking for public purposes within the meaning of the Takings Clause").

No reasonable jury could find for Plaintiff on this claim. Therefore, the Court will grant Defendant's motion for summary judgment on this issue.

### 4.     Criminal Statutes

Defendant moves for summary judgment to the extent Plaintiff raises claims under federal criminal statutes. To the extent Plaintiff seeks to impose criminal liability upon Defendant pursuant to the criminal statutes upon which he relies, he lacks standing to proceed. *See Allen v. Administrative Office of Pennsylvania Courts*, 270 F. App'x 149, 150 (3d Cir. 2008); *see United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."). The decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979). Moreover, none of the statutes cited by Plaintiff provide for a civil cause of action. *See Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009) (no private cause of action under 18 U.S.C. § 241 or § 242); *People ex rel.*

*Snead v. Kirkland*, 462 F. Supp. 914, 920 (E.D. Pa. 1978) (no private cause of action under 18 U.S.C. § 245). Accordingly, Defendant's motion for summary judgment will be granted as to the claims that seem to be raised under federal criminal statutes.

### 5. Contract

Defendant moves for summary judgment to the extent Plaintiff raises a breach of contract claim. Plaintiff contends that the "Constitution and its contents are a contract with Government to secure the Natural People's Inalienable Rights." (D.I. 41 at 9)

There is no evidence of record that a contract exists between Plaintiff and Defendant, a necessary element for a breach of contract claim under Delaware and New Jersey law. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (Delaware law); *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (New Jersey law). No reasonable jury could find for Plaintiff on this claim. Accordingly, Defendant's motion for summary judgment will be granted with respect to Plaintiff's contract claims.

### 6. Supplemental State Claims

Because summary judgment will be granted in favor of Defendant on the federal claims, to the extent there exist any state claims not previously discussed (which is difficult to discern from Plaintiff's pleadings), the Court declines to exercise jurisdiction over Plaintiff's supplemental state claims under Delaware and New Jersey law. *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Sarpolis v. Tereshko*, 625 F. App'x 594, 598-99 (3d Cir. 2016).

## IV.    CONCLUSION

For the reasons discussed above, the Court will:   (1) deny Plaintiff's request for recusal (D.I. 42); (2) grant Defendant's motion for summary judgment (D.I. 33); and (3) decline to exercise supplemental jurisdiction over any remaining state law claims.

A separate Order will be entered.